Warning, and may it please the Court, Ian Silverberg, Reno, Nevada, present on behalf of the petitioner in this matter, Mr. Hector Mancilla-Delafuente. This raises an issue whether a particular Nevada statute, specifically Nevada Revised Statute 205.690, obtaining or possessing a credit card or debit card with intent to defraud, is a crime involving moral turpitude under the Immigration Act. First thing- It does contain the element of intent to defraud, though, does it not, counsel? Well, it does, Your Honor, and what I would like to say about that is, first of all, he pled to the conspiracy. But I thought our case law said that if the object of the conspiracy is a crime involving moral turpitude, then an attempt or conspiracy to commit it is also a CIMT. That is correct, Your Honor. So in this case, I believe the statute goes beyond the generic definition in that it criminalizes the mere possession of the credit card as well. So you can- So to prevail, would you have to – would we have to find that the Nevada statute was divisible? Yes, Your Honor, because it does include conduct that some of it would be turpitudinous and some of it would not be. Is it divisible or is it overbroad? I believe it's divisible, Your Honor. I believe it actually does have the – I mean, it is in one paragraph, but it has several ways in which it can be violated. And I would argue that it is divisible in that regard. But wouldn't the possession also be with intent to defraud if it's contained within the same statutory definition? Your Honor, I believe that the mere possession itself would be criminalized. You would have to infer intent somehow, I guess, by use. I'm not exactly sure how, but I think that's part of the problem with calling this statute in its entirety a crime involving moral turpitude. Well, let's think about what the jury instruction would look like. In just possession, I'm quite certain, would never be a crime. I think that the statute – yeah, I understand what you're saying, Your Honor, but I think that the statute on its face says if you possess it, you can be found even without any element of use. And this Court has said, for example, in Beltran-Torado that involved the possession of a Social Security card, and immigration cases throughout have said there needs to be an element of use, not just the mere possession. So answer Judge Callahan's question. I apologize. What would you charge the jury with respect to the elements of the possession offense? Just tick off the elements for me. There would have to be possession. Right. Of a credit card. Or obtaining of a credit or a debit card without permission and with intent. With intent to defraud. Yes, with intent to defraud. Yeah. So how is this overbroad? The intent to defraud is an element of – You have to have the intent to defraud. You would have the intent but never act on that intent. And my understanding of, again, as Beltran-Torado and numerous other cases, there needs to be some element of use. But the problem is that our case law says that any crime that has as an element intent to defraud is categorically a crime involving moral turpitude. So under this hypothetical that we're talking about, if possession of a credit card is illegal under this statute, only if the defendant possesses it with the intent to defraud, why isn't it a categorical match? All I can say is, Your Honor, is it appears to me that that subsection 2 has elements that would involve moral turpitude and those that would not. So if we don't agree with you on that argument, do you have any other fallback position to prevail? Oh, yes, I do, Your Honor. Thank you. And that would be relating to – Because it's not looking good on that argument. I certainly understand. I certainly understand. And I did want to just indicate one other element before I move on to the petty offense exception, which I think is important here, which is this Court's holding in U.S. v. Garcia-Santana, where the Court said that a conspiracy to commit a burglary could not be an aggravated felony because a Nevada conspiracy doesn't require an overt act. And I would argue that that would be analogous here. Conspiracy to possess the card doesn't require any overt act and therefore shouldn't be considered a crime of moral turpitude. On the issue of whether the petty offense exception would apply in this case, I believe the Board of Immigration Appeals and the Immigration Court erred. They – the Immigration Court and the Board of Immigration Appeals indicated that this crime is not eligible for the petty offense exception because it's a crime under Section 237 as well as Section 212 of the Act. So if Mr. Mancela de la Fuente's conviction is a gross misdemeanor, as described in 8 U.S.C. 1227a21, doesn't that disqualify him from the petty offense exception in 8 U.S.C. 1182a2a? I don't believe it does, Your Honor, and here's why. We need to look at the language. The petty offense exception has those three elements, and the language is important, the specific language, where the maximum penalty did not exceed 1 year, whereas a Nevada gross misdemeanor uses the language up to a year. Does the BIA have published opinions on that point that says if the maximum sentence is up to a year, then that's it? I'm not sure. I'm not sure, Your Honor, if they do have published opinions on that. I was going by the – well, I was going by the issue of matter of Garcia-Hernandez. Let me correct myself. 23 INN decision 590, which is a – I believe it's a 2013 case. And that made the difference. That case basically said that if the crime falls under 237, which does not have a petty offense exception, then you don't get the petty offense exception. But if the crime involved falls under section 212, where the petty offense exception is located, then you would get the petty offense exception. And in this case, he was sentenced for 2 days on a gross misdemeanor that only has a sentence of up to a year. If you look at 237, the one that the Board of Immigration Appeals and the Immigration Court said made him ineligible for the crime of moral turpitude, the elements there are that he committed a crime of moral turpitude within 5 years of admission. Well, he was never technically admitted. He's illegal seeking cancellation of removal for a nonpermanent resident, not a permanent resident. So I don't believe it applies at all to him. Assuming it does apply, what do we use as his admission date? It would be the date he entered the country, which is 1997. So I don't believe that this does fall under 237. I believe this crime – and I certainly understand the Court's position that it's probably going to be a crime of moral turpitude, but it would fall – but he would still be eligible for the petty offense exception. This Court – oh, I'm sorry. Doesn't the matter of Cortez, though, I'm sort of going back on that, say that if the sentence of a year or longer could have been imposed, that's good enough? That is under 237, but the problem – my problem is not so much with that. It is that he's never been admitted. So 237 implicates somebody – yes, Your Honor. So if 237 does apply, this argument is not looking good for you either. That's exactly right. I agree. I would concede that. Can I save a couple minutes for rebuttal? I'm not trying to cut you off. I'm just – No. I think I've got – I don't know that I'll have any rebuttal, but I think I've got everything that I wanted. Well, you don't know what the government's going to say. That's a true story. I'll reserve my time. Okay. Thank you for your questions. All right. Good morning, Your Honors. My name is David Schor. I represent the Attorney General of the United States. Good morning. How is she these days? Good, thanks. The Petitioner in this matter, Mr. Mancilla De La Fuente, is subject to removal from the United States based on his unlawful entry. The immigration judge denied his application for relief in the form of cancellation of removal, ruling that he was ineligible for that form of relief because he was convicted of a crime involving moral turpitude described under Section 1227.8.2. The Board agreed and dismissed his appeal. The issue before this Court is whether the agency correctly ruled that Mancilla's conviction categorically qualified as a crime involving moral turpitude that precluded cancellation of removal, where his underlying offense, possessing the credit card of another without consent, includes the required element of intent to defraud. Can you respond to the argument about the need to prove use as disqualifying it for crime of moral turpitude status? There is no requirement imposed by the Board or by this Court that a fraud crime involving moral turpitude requires, you know, use or anything like that, where we've got an act, the possession of the credit card without consent, and then an intent to do any number of things, circulate, et cetera. And all of that is with the intent to defraud. And so that categorically qualifies as a crime involving moral turpitude. And I do just want to make the point that the statute that we're talking about, we're talking about Section 205.690, subsection 2. That's the statute he was convicted under. And only that section, that was the section that the immigration judge and the Board looked at. Subsection 1 defines a slightly different offense with its own elements. And so we're only looking at 2. And under that subsection, the full range of conduct qualifies as a crime involving moral turpitude, and none of it is overbroad. And the Court doesn't have to take the next steps as to whether or not it's divisible. There is no modified categorical analysis in this case. Well, Appellant, I think, cites Moore v. State as suggesting that the statute in question encompasses conduct that does not involve moral turpitude. What's your response to that? Well, that would be incorrect, Your Honor. Now, in Moore v. State, there was a conviction under this statute, but there was also a conviction for fraudulent use of the credit card. The defendant in that case didn't use the credit card, only presented it, and so that's why the conviction didn't stand. Now, for fraudulent use, different statute with different elements. There's no requirement under the law that use be a required element in order for an offense to constitute a crime involving moral turpitude. Now — Let me think about that for a second. I guess an analogy that comes immediately to mind is a mail fraud conviction where there is a mailing and furtherance with intent to defraud, the creation of a scheme and artifice to defraud, but it doesn't actually require the money to be obtained from the victim, merely the mailing of something in furtherance of the crime. Is that analogous? I wouldn't be able to sort of stand in the place of the Board and make that determination as to whether or not that would — What if the conviction was conspiracy to commit mail fraud? I hesitate to sort of take a guess at that, take a stab at that in place of the Board, Your Honor. What about conspiracy to — well, I guess conspiracy to engage in drug trafficking? And under the drug statutes, conspiracy does not require an overt act in furtherance of the conspiracy, but you don't have a fraud element in drug trafficking. Well, where we have the conspiracy conviction, you know, we look to the underlying crime, and the underlying crime here is one that requires as an element the intent to defraud. And there is an act. It is, you know, the act is possessing the credit card of another without consent and with the intent to do any number of things with that credit card. Is that an overt act for the purpose of the conspiracy statute? Well, I don't know, Your Honor. And it is true that Nevada does not require, this Court has found in U.S. v. Garcia-Santana, that the Nevada statute, conspiracy statute, is broader than the generic Federal definition. Now, that issue was never presented to the immigration judge or the Board or in the Court, so it's been waived, and it has not been administratively exhausted. But in any event, that the question of the overbreath of the conspiracy statute is, it's really apples and oranges here, where in the Agfel context, which is what Garcia-Santana, I believe, dealt with, we were looking at whether or not the Federal definition, the INA, which applies to generic, a generic conspiracy conviction, we're looking to whether or not the State conviction satisfied that generic definition of conspiracy. Now we're talking about here what is the generic crime involving moral turpitude, not conspiracy. And so we look to the underlying crime. Now, the conspiracy is the agreement to do the underlying crime. Now, with fraud crimes involving, crimes involving moral turpitude that are based on a fraud, what's critical is the intent. And once we have the agreement, regardless of whether or not we have an overt act, we have that intent. And so Mr. Mancilla's conviction, conspiracy to possess the credit card of another without consent and with intent to defraud, that qualifies as a crime involving moral turpitude, excuse me, under 1227.8.2. Now, under the cancellation of removal statute, there's the three cross-reference provisions, 1182.8.2, 1227.8.2, 1227.8.3. Now, a conviction just has to be under one of those, described under one of those three. Now, those three are independent and separate bars to cancellation of removal. And this Court recognized in Vasquez-Hernandez that one conviction may trigger multiple bars. And that's, well, what we have here is a conviction for a gross misdemeanor punishable by one year, and it's a crime involving moral turpitude. And that's precisely what 1227.8.2, subsection A.I., requires. Now, as far as the being admitted and committed within five years after admission, this Court, starting with Gonzales, Gonzales v. Ashcroft, and then again in Vasquez-Hernandez has said it doesn't matter whether or not the cancellation of removal applicant has been admitted or not. And it doesn't matter that he would not be deportable under these provisions. We're looking at the offense described under these provisions. And that offense is, and as the Board, you know, followed those cases in matter of Cortez, and said we look at the offense, crime involving moral turpitude, and we look at the sentence imposed or potentially imposed. And, you know, one year, you know, a minimum of a year under 1227.8.2, and that's exactly what we have here. Does the matter of Cortez stand for the proposition that if it's up to a year, that satisfies it even though he got less, right? It's what the statute says, Your Honor, what 1227.8.2 says, which is it's triggered when it's punishable by up to or sorry, by one year or more. That's when 1227.8.2 is triggered. Is there a case that says specifically it doesn't matter what he actually or she actually was sentenced to, it is what potential sentence the statute permits? Yeah, that's the Board has consistently interpreted the statute. And it's punishable by, in the actual punishment. And that might even be within the wording of the statute itself, Your Honor. But there's not a Ninth Circuit case on that, right? It's Board, it's BIA authority. As to which proposition? That up to, punishable by one year. Is there a Ninth Circuit case? Off the top of my head, I don't recall. But the statute itself under 1227 states punishable by one year or more. And this Court, as far as I know, has never, has never taken issue with that. But the BIA has always interpreted it that way. Yes. Yes. And following Gonzalez-Gonzalez v. Ashcroft and Vasquez-Hernandez, Cortez said exactly the same thing, which is we don't look at the immigration related provisions, that is, whether or not he'd be deportable under 1227.82. That is, was he admitted? We don't look at that, just as this Court didn't. And we don't look at the whole 5-year issue. We're looking at the offense itself. And his offense, a crime involving moral turpitude, punishable by up to a year, qualifies as one that's described under 1227.82. And for that reason, the petty offense exception doesn't apply. And as this Court recognized in Vasquez-Hernandez, the petty offense exception only applies under 1182.82 and does not apply to offenses under 1227.82. Because the Board correctly determined that he's ineligible for cancellation of removal, this Court should deny his petition for review. Thank you, Your Honors. I did have a little rebuttal, Your Honor. Thank you. I knew that was going to happen. Not to throw a major wrench in the works, but the Nevada legislature just recently amended the gross misdemeanor statute, NRS 193.140, to say instead of not more than a year, to say 364 days. And I think there's a serious question as to whether that would be applied retroactively. And I did my best to do my legislative history research, but I'm not very good at it. But what I did find ---- One of the things we look at is, is there an express direction in the statute itself? And if not, then we have a pretty difficult set of rules to apply to it. I certainly understand. And you know that the presumption is prospective as opposed to retroactive. And I'm well aware. And the reason I bring it up, Your Honor, even with that knowledge, is the Section 31 of the bill that was passed envisioned somebody being able to go back to court with a gross misdemeanor conviction of up to a year and have that changed to 364 days for good cause. So I think they did envision some ---- But did they envision somebody having to do that in order to qualify for this revision being applicable? That is absolutely correct, Your Honor. But I think they envisioned ---- So it's premature for us to say that he's entitled, he has to go through that step. Or that maybe the Nevada Supreme Court needs to rule on whether or not by adding that, that the legislature, by adding that provision, intended it to be retroactive by providing a mechanism for people to go and have their gross misdemeanor convictions changed. So I don't know if certification of them would be appropriate, but I wanted to get that out. And I thank you for your time. Thank you very much. The case just argued is submitted.
judges: Rosenthal, Tallman, Callahan